IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Felicia Bailey,
    Plaintiff

v.

Michael J. Astrue,
Commissioner of Social Security,
    Defendant

Civil Action 2:08-cv-1074

Judge Marbley

Magistrate Judge Abel

## REPORT AND RECOMMENDATION

Plaintiff Felicia Bailey brings this action under 42 U.S.C. §§405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security denying her application for Social Security Disability Insurance benefits. This matter is before the Magistrate Judge for a report and recommendation on the parties' cross-motions for summary judgment.

**Summary of Issues.** Plaintiff Bailey maintains that she became disabled on January 1, 2003, at age 36, due to asthma, arthritis in both knees, depression, chest pain, sleep apnea and diabetes. (R. 53.) Bailey has a high school education, but always attended special education classes. Bailey's past work experience includes driver, cleaner, laundry worker, sorter, home health aide, and clothes store associate. (Doc. 14 at 2.) The administrative law judge found that Bailey could not perform her previous work, but found that she retains the ability to perform a reduced range of light work. (R. 15.)

Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

•     The administrative law judge erroneously violated Social Security Ruling ("SSR")

00-4p, by failing to inquire about any inconsistencies between the vocational expert's testimony and the *Dictionary of Occupational Titles* ("DOT");

- The administrative law judge erroneously evaluated Bailey's educational level;

- The administrative law judge erroneously evaluated state agency psychologists, Dr. Katz's opinion; and

- The administrative law judge erroneously evaluated Bailey's credibility.

**Procedural History.** Plaintiff Bailey initially filed her application for disability insurance benefits on August 1, 2005, alleging that she been disabled since November 11, 2004. (R. 117-21.) This initial application was denied and Bailey did not seek further administrative review. (R. 96.) Bailey reapplied for disability insurance benefits on July 20, 2006, alleging that she been disabled since January 1, 2003. The application was denied initially and upon reconsideration. (R. 103-10.) Plaintiff sought a de novo hearing before an administrative law judge. (R. 111.) On February 12, 2008, an administrative law judge held a hearing at which Plaintiff, represented by counsel, appeared and testified. A medical expert and vocational expert also testified. (R. 9.) On June 26, 2008, the administrative law judge issued a decision finding that Bailey was not disabled within the meaning of the Act. (R. 9–21.) On September 11, 2008, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security. (R. 1–3.)

**Age, Education, and Work Experience.** Plaintiff Bailey was born April 19, 1966. (R. 19.) She completed high school in special education classes. (R. 147-48.) She has worked as a driver, cleaner, laundry worker, sorter, home health aide and clothes store

2

associate. (R. 142, 150-56.)

**Plaintiff's Testimony.** The administrative law judge fairly summarized Bailey's testimony at the administrative hearing as follows:

> [T]he claimant is single with a 22 year old child. She lives in a two story home with a friend, since July 2007. Before that she lived with her mother. She has a high school diploma and was in special education for all grades/all classes. She states an inability to read and write, but can add, subtract and make change. She has a driver's license, but has not driven in over a year because of vision problems. She took an oral test to obtain her driver's license.
>
> [S]he describes limited activities of daily living. She goes to bed at 4:00-5:00 a.m. and wakes around 2:00 p.m. She gets up, takes her medicine, and then goes back to lay down and watch television. She stays in bed seven to eight hours per day just laying down, not sleeping. She is able to care for grooming and dressing, but needs some assistance with bathing. She does not do any household chores. She goes out to play bingo once a month, but used to play every day until November 2004. She also states that she plays or plays or "covers" 27 cards at a time. She knows letters and numbers and has no problems participating. She has no limits on sitting and can lift a gallon of milk. She cannot stand for "too long" or walk "too far." She can button and zipper her clothes, but cannot open a jar. She also states that she drops things with both hands.
>
> [S]he alleges that she cannot work due to her mental health issues and pain in her hands, hips and legs. Her knees constantly hurt and they hurt worse when she walks. For relief, she uses "icy hot," which sometimes helps and she takes hot baths. She reported that she was advised to use a cane, but she does not use it as much as she should.
>
> [S]he reported that she has mood swings and thinks about things she used to be able to do. She feels she cannot work because "any little thing would make her upset." She described most days she just laid around the house and did not want to do anything. She did add that this has improved with her new medication.

(R. 16.)

**Medical Evidence of Record.** The administrative law judge's decision fairly sets out the relevant medical evidence of record. In her Statement of Errors, Bailey does not challenge the administrative law judge's findings with respect to her alleged exertional impairments. Accordingly, the Court will focus its review of the medical evidence on Bailey's alleged mental impairments.

<u>Allan B. Rain, Ph.D.</u> On October 5, 2005, psychologist, Dr. Rain, consultively examined Bailey. Plaintiff reported depression for the past 2 years. She also reported that she had 40% hearing loss in both ears from loud music, although she did not wear hearing aids, and was able to hear and answer questions during the examination. Clinical testing resulted in a verbal IQ of 70, performance IQ of 81 and full scale IQ of 74. Dr. Rain noted "It was difficult to determine if her current IQ scores were representative of her fundamental intellectual potential." Reading test documented Bailey had a vocabulary at the 7.4 grade level and comprehended reading at the 9.8 grade level. Dr. Rain diagnosed major depressive disorder and assigned global assessment of functioning ("GAF") score of 50. Dr. Rain concluded that Bailey's ability to relate to others seems markedly impaired. Her ability to understand, remember, and follow instructions was moderately impaired. Plaintiff's ability to maintain concentration, persistence, and pace was moderately impaired. Her ability to withstand stress and pressure associated with day-to-day work activity was markedly impaired. (R. 334-40.)

<u>Carl L. Tishler , Ph.D.</u> On November 16, 2005, Dr. Tishler, a psychologist with the Bureau of Disability Determination, reviewed the record and concluded that Bailey could perform simple, repetitive tasks, and could get along with others. Dr. Tishler

further opined that Bailey's physical impairment allegations "were not founded." (R. 346-48.)

Mount Carmel Hospital. On July 25, 2006, Bailey presented to the emergency room complaining of chest pain and depression. She reported a suicidal plan of taking excessive medication, but did not have the medications to take. She was treated and released. (R. 474-75.)

NetCare Corporation. Following her emergency room visit, Bailey was evaluated on October 20, 2006. She was scheduled for follow-up treatment at the Columbus Area Mental Health Clinic and advised as to programs available for financial help and prescription medication. (R. 370-77.)

On September 12, 2007, Bailey spoke by phone to a triage nurse about suicidal thoughts, and the nurse recommended that she come in. (R. 568.) Bailey had been missing scheduled appointments, and had not been taking her medications for the previous couple of months. *Id.* She explained that she had not taken some of her medications for financial reasons, and that she had not been attending appointments because she was busy moving into a new apartment. (R. 576.) She was admitted to the crisis stabilization unit for three days and her medications were adjusted. (R. 568-82.)

Padma Tandon. M.D. Bailey began counseling at the Columbus Area Mental Health Clinic on November 1, 2006 with psychiatrist, Dr. Padma Tandon. (R. 492.) Dr. Tandon prescribed a new antidepressant, Cymbalta. (R. 493.) On November 29, 2006, Bailey reported that her medication was helping a lot. (R. 491.)

In January 2007, Dr. Tandon completed a mental residual functional capacity questionnaire and concluded that Bailey was limited, but satisfactory, in her ability to work in coordination or close to others without undue distraction; to respond to work-

5

place changes; to understand, remember, and carry out detailed instructions; and to interact with the general public. (R. 563-67.)

On March 21, 2007, Bailey reported being "very happy" and stated that she and her boyfriend were going to get married soon. She had no suicidal thoughts. (R. 490.) On June 27, 2007, Bailey reported that she and her boyfriend had married in May, and that they were now living together. She appeared somewhat anxious, but her mood was "neutral to pleasant," and she denied any suicidal or homicidal thoughts. (R. 497.)

<u>Scott L. Donaldson, Ph.D.</u> Bailey was examined by consulting psychologist, Dr. Donaldson, in February 2007. Dr. Donaldson observed that Bailey's memory for past and recent events appeared limited. Bailey reported that her activities included attending church services, seeing a couple friends, and occasionally shopping for groceries with her mother, with the aid of a wheel chair. She did not clean, cook, or do laundry. Clinical testing resulted in a verbal IQ of 73, performance IQ of 79 and full scale IQ of 74. Dr. Donaldson concluded that Bailey's ability to understand, remember and carry out one or two step instructions may be weak, but not impaired; that her interpersonal relationship skills were moderately impaired; and that her ability to attend to relevant stimuli was moderately impaired. (R. 414-19.)

<u>Bonnie Katz, Ph.D.</u> After reviewing the file on February 20, 2007, state agency psychologist, Dr. Katz, noted several of Dr. Donaldson's observations and found them to be consistent with Dr. Tandon's observations. Dr. Katz gave both opinions weight. (R. 423.) Dr. Katz concluded that Bailey was capable of performing "routine, non complex tasks which do not have strict fast-paced time pressures. She appears capable of interacting superficially when required. She can make simple decisions. She can deal with occasional changes in routine. " (R. 421-23.)

6

**Medical Expert's Testimony.** The administrative law judge fairly summarized Jonathan W. Nusbaum, M.D., the medical expert's testimony at the administrative hearing as follows:

> Dr. Nusbaum testified the record documents that the claimant had bilateral carpal tunnel release in the summer of 2004 and her treating physician released her to return to work in October. She has complained of back pain although her physical examinations have been normal and in 2006, she had a magnetic resonance imaging ("MRI") of her lumbar spine which was normal (Exhibit 29F, p. 32). She has knee pain. In April 2005, x-rays of her knees were read as normal and by July 2007, she had bilateral tricompartmental degenerative joint disease. The claimant is obese with a body mass index ("BMI") of 66, which is about 200 pounds over her ideal weight. She has insulin dependent diabetes mellitus, but no evidence of diabetic ketoacidosis or neuropathy. The claimant reported visual problems; however, there are no visual examinations in the record. She has poorly controlled hypertension, but there is no evidence of end organ damage. She has been diagnosed with OSA and uses a C-PAP machine. A diagnosis of asthma appears in the record. She had testing with a pulmonology specialist which was negative for asthma and it was felt that her shortness of breath was due to obesity (Exhibit 1F, p. 1). Pulmonary functions were described as fairly normal. She has had emergency room visits for shortness of breath. She is currently being seen and treated for depression. It should be noted that the diagnosis of bipolar disorder has been mentioned; however. the claimant is not taking any psychotropic medications for that condition.
>
> Dr. Nusbaum opined that none of the claimant's impairments, whether considered individually or in combination, are of the required level of severity necessary to meet or equal any section of the Listing of Impairments, Appendix 1, Subpart P, Regulations No.4. Although the impairments did not meet of equal a listing, he opined that they did cause limitations on her functional capacity, particularly considering her knee problems and shortness of breath. He opined that the claimant would be able to lift 20 pounds occasionally and 10 pounds frequently, primarily because of her knee and pulmonary problems. She could sit for two hours at a time for a total of six hours in an eight-hour day and stand and/or walk for

>   30 minutes at a time tor a total of four hours in an eight-hour day.
>   She could occasionally stoop, squat, crouch or crawl. She should
>   not work in environments with high concentrations of respiratory
>   irritants or high humidity. The work environment should be limit-
>   ed to places with temperatures of 35 to 85 degrees Fahrenheit. He
>   also opined that the claimant would be able to perform work activ-
>   ity within these limitations for eight hours a day, five days a week.

(R. 12-13.)

### Administrative Law Judge's Findings.

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.

2. The claimant has engaged in substantial gainful activity since January I, 2003, the alleged onset date (20 CFR §§404.1520(b) and 404.1571 *et seq.*).

3. The claimant has the severe combination or impairments best described as: bilateral carpal tunnel release; degenerative joint disease ("DJD") bilateral knees; morbid obesity; insulin dependent diabetes mellitus; obstructive sleep apnea and depression (20 CFR §404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, it is found that the claimant has the residual functional capacity consistent with the testimony of the medical expert and is able to lift, carry, push or pull 20 pounds occasionally and 10 pounds frequently; sit for two hours at a time for a total of six hours in an eight-hour day and stand and/or walk for 30 minutes at a time for a total of four hours in an eight-hour day. She could occasionally stoop, squat, crouch or crawl. She should not work in environments with high concentrations of respiratory irritants or high humidity and the work environment should be between 35 to 85 degrees Fahrenheit. She is capable of understanding, remembering and performing simple one to two step instructions and has a moderate limitation with attention and interaction.

6. The claimant is unable to perform any past relevant work (20 CFR

8

§404.1565).

7. The claimant was born on April 19, 1966 and was 36 years old, which is defined as a "younger individual age 18-49," on the alleged disability onset date and at all times relevant to this decision (20 CFR §404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR §404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR §§404.1560(c) and 404.1566).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2003 through the date of this decision (20 CFR §404.1520(g)).

(R. 11-21.)

**Standard of Review**. Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" *Id. LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366

(6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.** Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- <u>The administrative law judge erroneously violated SSR 00-4p, by failing to inquire about any inconsistencies between the vocational expert's testimony and the DOT.</u> Bailey argues that the administrative law judge did not fulfill her "affirmative responsibility" to ask the vocational expert whether her testimony about the step-five jobs the vocational expert identified was consistent with the DOT. Plaintiff further asserts that there was no basis in the record for the administrative law judge's assertion of consistency with the DOT with respect to the step-five jobs identified by the vocational expert. Bailey further argues that the inconsistency of the hypothetical question means that the testimony of the vocational expert cannot constitute substantial evidence.

- <u>The administrative law judge erroneously evaluated Bailey's education level.</u> Bailey contends that substantial evidence does not support the administrative law judge's formal finding that she had "at least a high school education" within

10

the meaning of 20 C.F.R. § 404.1564 (2008). Bailey argues that objective achievement testing, history of special education classes, and intelligence testing prove that substantial evidence does not support the administrative law judge's determination that she had "at least a high school education."

- <u>The administrative law judge erroneously evaluated state agency psychologists, Dr. Katz's opinion</u>. Bailey contends that the administrative law judge erroneously evaluated non-examining state agency psychologist Dr. Katz's February 2007 opinions and failed to include her assessment when determining her residual functional capacity.

- <u>The administrative law judge erroneously evaluated Bailey's credibility</u>. Bailey reasons the administrative law judge unreasonably found her uncredible due to: Bailey did not visit treating physician Dr. Tandon monthly as she alleged; Bailey told examining psychologist Dr. Raia that she had forty-percent hearing loss when Bailey could actually understand oral communication; Bailey told Dr. Tandon on June 27, 2007, that she was living with her husband, but she otherwise stated that she moved in with her friend in "July 2007;" the administrative law judge erroneously maintained that "objective" evidence for Bailey's statements was missing; and Bailey was found not credible on the grounds that she worked after her alleged onset date.

**Analysis.** <u>SSR 00-4p and the Vocational Expert Testimony.</u>

Bailey's first argument hinges on the administrative law judge's determination

11

with respect to Step 5 of the sequential evaluation of the evidence. Under that step, administrative law judges are permitted to consider " 'reliable job information' available from various publications" as evidence of the claimant's ability to do other work "that exists in the national economy." S.S.R. 00-4p, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000) (citing 20 C.F.R. §§ 404.1566(d) and 416.966(d)). Such publications include the *Dictionary of Occupational Titles* ("DOT"), which provides "information about jobs (classified by their exertional and skill requirements) that exist in the national economy." 20 C.F.R. § 416.969. Administrative law judges are also authorized to consider the testimony of vocational experts as a source of occupational evidence. S.S.R. 00-4p, 2000 WL 1898704, at *2. *Lindsley v. Commissioner of Soc. Sec.*, 560 F.3d 601 (6th Cir. 2009).

On occasion, a vocational expert's testimony conflicts with the information set forth in the DOT. In an effort to insure that such actual or apparent conflicts are addressed, the Social Security Administration has imposed an affirmative duty on administrative law judges to ask the vocational expert if the evidence that he or she has provided "conflicts with [the] information provided in the DOT." S.S.R. 00-4p, 2000 WL 1898704, at *4. Administrative law judges must also "obtain a reasonable explanation for ... apparent conflict[s]" if the vocational expert's evidence "appears to conflict with the DOT." *Id. Lindsley* at 603 F.3d 601 (6th Cir. 2009).

The vocational expert present at the hearing testified as to Bailey's past employment as a laundry worker, performed at the medium, unskilled level; commercial cleaner performed at the heavy and unskilled level; driver, performed at the light, semi-

skilled level; and house manager at the medium, semi-skilled level. The vocational expert testified that Bailey performed all of the above jobs in a manner consistent with the DOT. (R. 84-85.)

The vocational expert was asked to assume an individual with Plaintiff's age, education and work experience with the limitations identified by Dr. Nusbaum. The vocational expert testified that this person could not perform her past work, but could perform other jobs such as 17,000 light jobs (including 2,000 assembler, 1500 sorter, and 1,000 packer jobs), and 10,500 sedentary jobs (including 1,000 assembler, 750 sorter, and 400 packer jobs). (R. 86.)

With further hypotheticals involving the mental limitations suggested by Dr. Donaldson and Dr. Katz, the vocational expert responded that these limitations would not preclude any of the above listed jobs. (R. 87.)

When testimony of the vocational expert conflicts with the DOT, regarding a claimant's ability to perform work in the national economy, vocational expert's testimony "trumps" DOT, because DOT is not sole source of admissible information concerning jobs, and administrative law judge should supplement DOT data with local information detailing jobs in the regional community. *See*, 20 C.F.R. §§ 416.912, 416.920.

The administrative law judge determined that Bailey was not capable of performing a full range of light work, so she appropriately called a vocational expert to testify whether Bailey, given her limitations, was capable of performing other jobs in the national economy. The vocational expert identified the above-mentioned jobs that Bail-

ey could perform with her limitations. Notwithstanding, Bailey argues that the administrative law judge's reliance on the vocational expert's testimony was improper because the administrative law judge did not ask if the jobs identified by the vocational expert, i.e., assembler, sorter and packer jobs, conflict with the DOT. In her Statement of Errors, Bailey does not identify any conflict between the DOT and the testimony of the vocational expert. Instead, Bailey repeatedly emphasizes that the administrative law judge failed to fulfill her "affirmative responsibility" with regard to the step-five jobs identified. Bailey has failed, however, to cite any authority establishing that a conflict between the DOT and a vocational expert's testimony exists. As the Commissioner notes, there are a number of DOT listings for sorter, packer, and assembler jobs, in accord with the vocational expert testimony, which indicate that they are light and/or sedentary positions. *See* Doc. 18 at 10.

The vocational expert credibly testified that there was no such conflict between her views and the DOT. Bailey was represented at the hearing, and her counsel was afforded a full opportunity to cross-examine the vocational expert. The administrative law judge had no duty under S.S.R. 00-4p to interrogate the vocational expert further. *See Martin v. Comm'r of Soc. Sec.*, 170 Fed.Appx. 369, 374 (6th Cir. 2006) ("Nothing in S.S.R. 00-4p places an affirmative duty on the Administrative law judge to conduct an independent investigation into the testimony of witnesses to determine if they are correct.").

Social security regulations do not require the Commissioner or the vocational

14

expert to rely on classifications in the DOT. Therefore, an administrative law judge may rely on the vocational expert's testimony even if it is inconsistent with the DOT. *Conn v. Secretary of Health and Human Services*, 51 F.3d 607, 610 (6th Cir.1995).

The administrative law judge's evaluation of plaintiff's education. Bailey claims that the administrative law judge incorrectly found she was educated at a high school level. (R. 19.) Bailey argues that objective achievement testing, her history of special education classes, and intelligence testing prove that substantial evidence does not support the administrative law judge's determination.

As to objective achievement testing and intelligence testing, Plaintiff relies on Dr. Raia's and Dr. Donaldson's testing result. Plaintiff argues: "Significantly, the ALJ never mentioned either Dr. Raia's or Dr. Donaldson's intelligence testing." *See* Doc. 14 at 12. Plaintiff incorrectly listed Dr. Raia as the psychologist who examined Plaintiff in October 2005 and not Dr. Rain. Dr. Raia is the individual with the Ohio Bureau of Disability Determination whom the report of November 1, 2005 was addressed, *See* R. 334, so therefore the administrative law judge would not have acknowledged his name. The administrative law judge did weigh the opinion of Dr. Rain and rejected his opinion on the basis it was inconsistent with the medical evidence of record and by his assigning of a GAF score of 50, it was inconsistent with his own mental status testing results. (R. 18-19.) The administrative law judge also weighed Dr. Donaldson's opinion and afforded it "great weight" in assessing Bailey's residual functional capacity. (R. 15.) Plaintiff further argues that because Bailey attended special education classes she does not have

15

a "high school education". Bailey testified during the administrative hearing that she had graduated from high school.

In the specific context of this case, the Court finds that if a remand were ordered, the result would not change. The hypothetical to the vocational expert assumed an individual with plaintiff's "education", without specify whether she had a limited education or a high school education. As the Commissioner notes, the vocational expert testified that she has been present for Bailey's testimony and had reviewed Bailey's file.

In an additional hypothetical, the administrative law judge also asked the vocational expert to assume an individual with the limitations reported by Dr. Donaldson, i.e. ability to understand, remember, and carry out one to two step instructions, with a moderate limitation on attention and interaction. *See*. R. 86-87. The vocational expert's testimony was very clear that a substantial number of jobs could be done by a claimant with more limitations than those which the administrative law judge found to exist. Plaintiff has advanced no reason to believe that, if the administrative law judge had specifically stated plaintiff's education was "limited," that the vocational expert's testimony would have been found to be unreliable or that the administrative law judge would not have adopted it.

Bailey's arguments also fail to address the "substantial evidence" standard to be applied in Social Security cases. Rather, she attempts to find procedural error in the administrative law judge's decision. The Court concludes, however, that the administrative law judge invoked the proper rules for Bailey's residual functional capacity and

her age, education, and work experience. In addition, the administrative law judge was entitled to rely on the testimony of the vocational expert in reaching her decision.

Subjective Symptoms: Credibility Determination. It is, of course, for the administrative law judge, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 247 (6th Cir. 2007) (citations omitted). An administrative law judge's credibility findings are entitled to considerable deference and should not be lightly discarded. *See, Villarreal v. Secretary of Health and Human Services,* 818 F.2d 461 (6th Cir. 1987); *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230 (6th Cir. 1993). Determination of credibility related to subjective complaints rests with the administrative law judge and the administrative law judge's opportunity to observe the demeanor of the claimant is invaluable and should not be discarded lightly. *Gaffney v. Bowen,* 825 F.2d 98 (6th Cir. 1987).

However, the administrative law judge is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility." *Rogers, supra* (citation omitted). Rather, such determination must find support in the record. *Id.* Whenever a claimant's complaints regarding symptoms or their intensity and persistence are not supported by objective medical evidence, the administrative law judge must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record." *Id.* The entire case record includes any medical signs and lab findings, the

17

claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record. *Id.* Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant while inconsistency, although not necessarily defeating, should have the opposite effect. *Id.*

It is true that some of the factors cited by the administrative law judge when Bailey's testimony was found to be less than credible are subject to challenge. However, the administrative law judge did carefully analyze Bailey's credibility and set out good reasons for not finding her testimony fully credible. The administrative law judge is the finder of fact; and her findings cannot be set aside when they are supported by substantial evidence. They are so supported here. For example, Bailey complained of wrist pain, dropping things, and an inability to open jars, despite carpal tunnel release surgery, a doctor's release to return to work, and no subsequent treatment for this condition. Bailey further complained of constant pain in her knees, but examinations showed a full range of motion, normal X-rays, Bailey underwent conservative treatments, and she had no restrictions imposed by treating or examining physicians. The administrative law judge also noted Bailey failed to adhere to treatment recommendations. (R. 17-18.)

From a review of the record as a whole, I conclude that there is substantial evidence supporting the administrative law judge's decision denying benefits. Accordingly, it is **RECOMMENDED** that the decision of the Commissioner of Social Security be **AFFIRMED.** It is **FURTHER RECOMMENDED** that plaintiff's

motion for summary judgment be **DENIED** and that defendant's motion for summary judgment be **GRANTED.**

If any party objects to this Report and Recommendation, that party may, within ten (10) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

s/Mark R. Abel<br>
United States Magistrate Judge